Common Pleas Court of Hamilton County.

IN .RE APPLICATION OF WILLIAM VON UEHN.

Decided July 9, 1928.

168

*Harry H. Shafer* and *Gordon D. Wilson,* for petitioner. *Chas. P. Taft, 2d,* county prosecutor, for respondent.

STRUBLE, J.

The court in its opinion in the Tumey case (25 N. P. [N. S.], 580) and its opinion in the Busch case (26 N. P. [N. S.], 368), fully considered the legal propositions involved in the pending case, and may as well decide this case now, and from the bench.

The court will re-affirm what it said and what it did in these cases, which as to the essential legal proposition, namely, that convictions by courts pecuniarily interested in such convictions are denials of due process of law, the court now has the affirmation of the Supreme Court of the United States in the decision in the Tumey case.

In the Tumey and Busch cases this court considered the judgments were void, because the mayors in these cases were interested judges.

Substantial "interest" of a judge in his decisions uniformly has been held by courts and text writers of the highest authority (Cooley Con. Lim., 7th Ed., pages 592 to 594) to render his decision void.

This principle of judicial authority has for time out of mind been crystallized in the maxim "no judge shall decide a case in which he has a direct, immediate substantial interest." Our fathers saved this principle for us when in our Constitution, without qualification, they vested judicial power in the courts.

This court must function true to its convictions; where-

fore its judgment is that the relator is entitled to be discharged from the custody of the sheriff on this writ of habeas corpus.

Briefly as to the facts:

The relator is being held in jail on a commitment by the mayor of the village of Harrison in default of the payment of a fine of $500 on a liquor charge.

Relator was arrested without warrant by a state prohibition officer at a camp on the Whitewater River, in Hamilton county, seven or eight miles from the corporate limits of Harrison, and taken by the officer to the mayor of Harrison, where the affidavit was filed upon which a warrant was issued and given to the Prohibition Officer and the relator was then and there arrested on the warrant, and being immediately arraigned and not knowing, nor having the advice of counsel nor of the court as to his rights, he plead guilty without challenging the right of the court to try him, and was fined and committed to jail as aforesaid.

What probably happened is that the mayor and state prohibition officer sat down cheek by jowl, conspired and soft pedalled relator into jail.

Another fact to be considered is that the mayor is here in open court with a dulcifluous viva voce waiver of his fees.

This waiver of his fees and relator's plea of guilty counsel claims leaves the relator with having lost his liberty by due process of law; and counsel claims further that if this be not so the relator's remedy was by petition in error, which he did not pursue, and now it is too late to pursue this remedy.

Counsel's claim is that the mayor's judgment was merely "voidable" and that the relator must suffer the loss of his liberty, because habeas corpus cannot be made a substitute for error proceedings.

The court's conclusions as to these claims of counsel will appear from what follows:

The court conceives that there are several grounds for the discharge of the relator, if we are to regard as of binding force fundamental law and principles of American

government, the disregard of which as relates to the minor courts of the state in certain legislative policies, practices and court decisions leaves these courts subject to subsidization by individuals for selfish ends and by dominating reform groups in the interest of enforcing their particular reforms by penal action.

An example of what can be done by force and favor of such policies, practices and court decisions is what was, and is being attempted to be done by a group of the citizenry promoting the enforcement of prohibition. This group actually secured legislation whereby the minor courts of this state were fixed for convictions in liquor cases and for seven or eight years, through the organization of such of the minor courts as it could lay hold of into liquor and kangaroo courts subjected the people to trials involving their liberty and property without due process of law.

The court's first ground for discharging the relator is that the mayor of Harrison, as well as all minor courts of this state similarly situated are without final jurisdiction in state liquor cases, according to the Supreme Court of the United States in the Tumey case.

The mayor of Harrison was exercising final jurisdiction when he accepted relator's plea of guilty and imposed a fine. The relator's plea of guilty and the mayor's viva voce waiver of his fees does not change the situation brought about by the decision of the Supreme Court of the United States in the Tumey case. The mayor cannot revest himself with jurisdiction by merely waiving fees, nor can the defendant revest the court with jurisdiction it lost by the Tumey decision by a plea of guilty.

Courts have and can exercise only such power and jurisdiction as is conferred upon them by the General Assembly of Ohio. The mayor's "interest" in his judgments is by force of the statutes creating his status, situation and the way he must function in the judicial system of the state. It will require legislation to change the situation and there has been no legislation by the General Assembly of Ohio restoring the final jurisdiction of the minor courts of this state since the decision of the Su-

preme Court in the Tumey case, except the Marshall Bill, and that was defeated on a referendum.

This cause is before the court on habeas corpus and counsel for sheriff calls the court's attention to the decision of the Supreme Court of Ohio in the Tari case, which counsel claims in effect is a denial of the remedy of habeas corpus. The Tari case was an error proceeding, as the court recalls, and there was a four to three decision by the Supreme Court. The decision of the four was upon the ground that the question of pecuniary interest of the judge had to be raised at the trial and could not be otherwise raised, for the reason, as they claim, such judgments were merely voidable and not void, where the question of "interest" of a judge was not raised at the trial.

This court considers the decision of the Supreme Court of the United States in the Tumey case as authority for holding these judgments void, and if so, the remedy of habeas corpus is a proper remedy. Having this view of the Tumey decision by the United States Supreme Court, this court holds the judgment of the mayor of Harrison, imposing a fine on this relator, as void.

In so doing this court disregards the decision of the four judges of the Supreme Court of Ohio and follows the Supreme Court of the United States in the Tumey case as this court understands that decision.

The court considers that this holding of the four distinguished judges of the Ohio Supreme Court is not in accord with the long established rule and is likely to be of short duration and must be disregarded by this court if it is to keep step with the fundamentals of justice recognized in the jurisprudence of the English-speaking people since Magna Charta and so strikingly emphasized as early as 1610 by Lord Coke in the Dr. Bonham case reported in 8 Coke 114-a; 2 Brownlow, 255.

A further ground for discharging the relator is that mayors of villages are expressly created as executive officers, are so elected, and are nowhere in the statutes created or mentioned as judges, except that from time to time they have had extended to them the right to exercise judicial power.

In the judgment of this court they have no right to be given or to exercise judicial power, which, unquestionably, they are exercising in the trial of state cases.

Mayors, and for that matter, any other officials, have no right to have and exercise both executive and judicial powers at the same time. Such a situation violates the fundamental principle of American government, to-wit, that of the separation of the departments of government, and in the judgment of the court, a mayor having been created as an executive officer, he is to be given executive powers only, and that it is a denial of due process of law for one to be forced to trial before him involving his liberty or property.

The court has here in mind the exercise of jurisdiction under state laws, not under municipal ordinances, because as the court understands there is a clear distinction between the trial of cases by mayors under municipal ordinances and the trial of cases under state laws.

The court is speaking of the exercise of the judicial power which by the Constitution is vested in the courts, and considering that as to the trial of cases under municipal ordinances a mayor is not exercising the judicial power, which by the Constitution is vested in the courts. (*Markle* v. *Council of Akron*, 14 O. 589.)

By reason of the great power, jurisdiction and the severe penalties they may impose under the prohibition laws of this state, it has become a serious menace to the liberty of the people to further recognize the right of a mayor of a village to be both an executive and a judge and function as such co-extensive with his county, or counties, if his village happens to have territory in more than one county.

As a further ground for relator's discharge the court questions the constitutionality of county-wide jurisdiction which the mayor exercised in relator's case, although it has been recognized in this state from its organization.

County-wide jurisdiction was not a serious matter until the legislature vested minor courts with such vast power under the prohibition laws, and insomuch as what can be done for the enforcement of prohibition can be done for

the enforcement of other laws, it is imperative that there be a restudy of this question.

So far as we can recall the question has not been squarely raised in any case, but clearly, county-wide jurisdiction is out of harmony with the fundamental principles of American government. It is a contradiction of local self-government, which in the minds of the fathers of our Constitutions and all thinking people is closely associated with and in a way essential to the preservation of liberty.

Likewise, it is a principle of American government that the people are to have political control over their officials, and county-wide jurisdiction clearly violates this principle.

Constitutions should be construed in such a way as to bring them in harmony with fundamental principles of American government.

In the early case of *Leland* v. *McBriar*, 15 O. S., 598, the court in discussing this fundamental principle of American government says:

"that the electors of each district or civil subdivision of the state shall have the right to select their own official representatives or public functionaries."

The minor courts of the state are statutory judges and the Constitution provides that they are to be elected by the electors of the judicial district for which they are created. The judges of the municipalities and the townships are created for their municipalities and townships, and their judicial districts necessarily are the municipalities and townships for which they were created.

It seems logical to conclude that judges, like other officials, are to function only in the political subdivision for which they were created and in which they were elected. The power being exercised by the Chief Justice of the Supreme Court of assigning judges of the common pleas court and courts of appeal to other counties is specially provided for in the Constitution.

One is forced to the conclusion that the fathers of our Constitution were off their guard, or the courts are giving a wrong construction to the Constitution, when, for example, the mayor of a little village like Loveland, in this county, which has territory in three counties, can be built

up with amazing power, jurisdiction and authority, and be permitted to function as an executive and a judge over the people of three counties, in which in all probability there are eight to ten great cities, and thirty-five to forty villages, many of which he was never in in his life, and to find his way there he would have to have a guide.

As I read the Constitution of Ohio I can see no more authority for thus extending the jurisdiction of the mayor of a little village than there is to extending his jurisdiction over the whole state.

It is necessary for the due administration of the law that the minor courts of the state be re-situated in the judicial system of this state. This court has heretofore pointed out how this can be done by legislative action.

The court has suggested—

a. That mayors be deprived of their judicial power, otherwise left as they are, and a new official for the villages be created, to be a judge only, and that the cities be given by general laws municipal courts. We would thus have only judges exercising judicial power.

b. Abolish the fee system as to minor courts and their police officials, and compensate them by salaries to be paid by their political subdivisions, they to charge fees as they do now, but the fees they earn to belong to and be paid to their political subdivisions.

c. Withdraw from the minor courts county-wide jurisdiction and give them ample civil and final jurisdiction in state misdemeanor cases, to be exercised only in their own political subdivisions.

This would give the people local self-government and leave the minor courts free from the menace of group control. The minor courts were created for the local communities to accommodate local needs and should be held to the execution of the purpose for which they were created.

The court feels that if the foregoing suggestions are carried out as to the minor courts we will have a very satisfactory administration of the law in these courts.